UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:22-CV-00072-EBA

ROBERT CAUDILL,                                                                PLAINTIFF,

V.                    **MEMORANDUM OPINION & ORDER**

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,                                      DEFENDANT.

*** *** *** ***

INTRODUCTION

Plaintiff, Robert Caudill, appeals the Acting Social Security Commissioner's denial of his application for disability insurance benefits. [R. 1]. Caudill alleges that the Administrative Law Judge incorrectly assessed his residual functional capacity[1] for two reasons: (1) he ignored treatment records from Caudill's treating neurologist; and (2) he improperly discounted Caudill's credibility. [R. 11]. Caudill and the Acting Commissioner filed briefs in support of their respective positions. [R. 11; R. 13]. So, this matter is ripe for review. The Court will affirm the Acting Commissioner's final decision for the reasons below.

FACTS AND PROCEDURAL HISTORY

Robert Caudill is an experienced miner and mine foreman. [R. 6-1 at pgs. 31, 118]. Unfortunately, Caudill suffers from osteoarthritis, diabetes mellitus, pneumoconiosis, diabetic neuropathy, and carpal tunnel syndrome, among numerous other physical conditions.

---

[1] Residual functional capacity "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

[*Id.* at pg. 23]. In December 2016, he ceased working. [*Id.* at pgs. 239, 252]. In January 2019, Caudill filed an application for disability insurance benefits. [*Id.* at pgs. 239–41]. At first, he alleged disability starting in December 2016, when he was 45. [*Id.* at pg. 239] ("I became unable to work because of my disabling condition on December 1, 2016."). Later, however, he amended the onset of his disability to October 14, 2017, when he was 46.[2] [*Id.* at pg. 205]. Caudill's date last insured was December 31, 2019, when he was 48.[3] [*Id.* at 152]. So, to prevail, Caudill needed to establish that he was disabled within the meaning of the Social Security Act between October 14, 2017 and December 31, 2019.

Caudill's application for disability benefits was denied initially and on reconsideration. [*Id.* at pgs. 149, 166, 176] (concluding that "[w]hile" Caudill is "somewhat limited," he can "still perform most work activities"). Thereafter, he requested a hearing before an Administrative Law Judge. After the hearing, the Administrative Law Judge found that Caudill is not disabled within the meaning of Title II. [*Id.* at pgs. 20–33]. Caudill requested review by the Social Security Administration's Appeals Council, but to no avail. [*Id.* at 6–9]. Because the Appeals Council declined review, the Administrative Law Judge's decision became the Acting Commissioner of Social Security's final decision, which is subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

Now, Caudill requests judicial review of the Administrative Law Judge's decision. [R. 1]. He presents two issues in his appeal. *First*, Caudill argues that the Administrative Law Judge's residual functional capacity determination is not supported by substantial evidence because it

---

[2] At an administrative hearing, Caudill amended his alleged onset date to the day after the date of a prior unfavorable decision that he received related to a previously filed claim for disability. [R. 6-1 at pgs. 95–120].

[3] "The date last insured . . . is the last day of the quarter a claimant[] meets insured status for disability or blindness. For title II Disability Insurance Benefit . . . claims, adjudicators cannot establish onset after the DLI." POMS DI 225501.320 *Date Last Insured (DLI and the Established Onset Date (EOD))*, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425501320. Put another way, Caudill must establish disability on or before December 31, 2019 to be entitled to a period of disability and disability insurance benefits.

disregards treatment records from Caudill's treating neurologist. [R. 11 at pg. 1]. *Second*, Caudill argues that the Administrative Law Judge's residual functional capacity determination is flawed because it improperly discounts Caudill's credibility. [*Id.*].

STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). So, the Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It's important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[4] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting

---

[4] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

*Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

ANALYSIS

In his appeal, Caudill asks this Court to review whether the Administrative Law Judge properly considered: (1) treatment records from Caudill's treating neurologist; and (2) Caudill's credibility. Both issues concern the Administrative Law Judge's determination of Caudill's residual functional capacity.

The Acting Commissioner argues that Caudill's arguments on appeal "are unavailing" and "reflect a misunderstanding of the regulations." [R. 13 at pg. 3]. Furthermore, she contends that the Administrative Law Judge's decision "was well reasoned, well supported, and should be affirmed" on substantial evidence review. [*Id.* at pg. 12]. The Acting Commissioner is correct that the Administrative Law Judge's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). Caudill does not dispute that. Instead, Caudill argues that the Administrative Law Judge failed to support his factual findings with substantial evidence. [*Id.*].

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

> (i)    At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii)   At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii)  At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv)   At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v)    At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the Administrative Law Judge reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Caudill takes issue with the Administrative Law Judge's determination of his residual function capacity, which implicates steps four and five of the analysis.

A

Caudill argues that the Administrative Law Judge's residual functional capacity determination is not supported by substantial evidence. However, Caudill "identifies no inconsistency between the [residual functional capacity] for [sedentary exertional work] and [his various] diagnoses, nor does he explain how the diagnoses translate to any specific functional limitations that are inconsistent with the [residual functional capacity]." *Terwilliger v. Comm'r Soc. Sec.*, 801 F. App'x 614, 622 (10th Cir. 2020). The nearest Caudill comes to doing so is by highlighting that the Administrative Law Judge "ignored" Dr. Naveed Ahmed's treatment records.[5] [R. 11 at pg. 6] (asserting that the Administrative Law Judge "failed to cite Dr. Ahmed's treatment records and, as a result, credited the treatment notes of a nurse practitioner over a specialist").

But Caudill visited Dr. Ahmed, a neurologist, *after* December 31, 2019, his date last insured. It's well-established in this circuit that evidence of a claimant's medical condition from *after* his date last insured is relevant *only* where it "illuminates that condition *before* the expiration of insured status." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (emphasis added) (citations omitted). Even medical opinions obtained after the date last insured are minimally probative as to the claimant's condition during the insured period. *See id.* So, Dr. Ahmed's treatment notes—which contain no medical opinion—are minimally probative at

---

[5] In his brief, Caudill refers to the medical opinion of Dr. James Owen, who opined that Caudill should sit no more than two hours, stand no more than one hour, and walk no more than one hour in an eight-hour workday. [R. 11 at pg. 7]. Caudill also references the testimony of a vocational expert, who indicated that such limitations would eliminate all fulltime work. [*Id.*]. However, on appeal, Caudill doesn't challenge the sufficiency of the evidence supporting the Administrative Law Judge's decision to discredit Dr. Owen's testimony. [*Id.*]. Rather, he references Dr. Owen's testimony to lend support to Dr. Ahmed's treatment notes. [*Id.*] ("Even assuming that substantial evidence supports the ALJ's assessment of Dr. Owen's opinion and Mr. Caudill's limitations before the stroke, the ALJ's decision is not supported in his review of Mr. Caudill's limitations after the stroke because the ALJ ignored Dr. Ahmed's records.").

best.[6] *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").[7]

True, Dr. Ahmed's treatment notes concern Caudill's cerebrovascular accident, which occurred on December 27, 2019—just four days before his date last insured. However, the day after his cerebrovascular accident, Caudill denied any sensory loss, demonstrated normal coordination, and was otherwise asymptomatic. [R. 6-1 at pgs. 26, 28–29, 1328–31]. Caudill was hospitalized for one night, then discharged. And upon discharge, Caudill was permitted to resume his "usual level of [work] activity" with directions to follow-up with a neurologist a couple weeks later. [*Id.* at pg. 1331].

Two weeks later, when Caudill was seen by Dr. Ahmed, Caudill reported that his gait was "unsteady" and that he suffered from dizziness, headache, numbness, paresthesia, and tingling. [*Id.* at pgs. 1432, 1434–35]. That said, when Dr. Ahmed physically examined Caudill, he determined that Caudill had unimpaired balance and gait, uninhibited coordination, full cognition, good consciousness, and normal sensation and fine motor skills. [*Id.* at pg. 1436]. So, to the extent Dr. Ahmed's report is probative at all, it simply supports the earlier findings of the Administrative Law Judge, informed by the treatment notes of the nurse practitioner that Caudill takes issue with:

---

[6] Caudill characterizes Dr. Ahmed's treatment notes as medical "opinions." [R. 11 at pg. 6] (arguing that "Dr. Ahmed's observations and opinions should have been given far more weight than a non-specialized nurse practitioner"). However, Dr. Ahmed's treatment notes merely contain treatment notes, Caudill's medical history, and clinical findings. Such documentation qualifies as "other medical evidence" under the regulations, not as opinion evidence. *Compare* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion evidence), *with* 20 C.F.R. § 404.1513(3) (defining other medical evidence). Opinion evidence opines about what a patient can do despite his medically determinable impairments, such as work limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). Dr. Ahmed's treatment notes offer no such opinion. Also, Caudill's argument that Dr. Ahmed's treatment notes are superior to those of a nurse practitioner, [R. 11 at pg. 6], is unavailing for two reasons: (1) Dr. Ahmed did not provide a medical opinion; and (2) even if he had, the old-order hierarchy of medical opinions was eliminated in 2017. 20 C.F.R. § 404.1520c(b)(4) ("The medical *opinion* . . . of a medical source who has received advanced education and training to become a specialist *may* be more persuasive about medical issues related to his or her area of specialty than the medical *opinion* . . . of a medical source who is not a specialist in the relevant area of specialty.") (emphasis added).

[7] The same argument holds for Caudill's passing references to his use of a cane. [R. 11 at pg. 8]. Caudill began to use a cane only *after* his date last insured, [*Id.* at pg. 4], so that evidence was minimally probative as to Caudill's condition *prior to* his date last insured. *Strong*, 88 F. App'x at 845.

that Caudill suffered no cognitive impairment from his cerebrovascular accident that should impact his ability to perform at least sedentary exertional work. [*Id.* at pg. 1426]. Indeed, it is not enough that Caudill merely complained of certain debilitating conditions to his neurologist, Dr. Ahmed.[8] "[S]ubjective complaints do not constitute objective medical findings." *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 610 (6th Cir. 2003).

Caudill's argument that the Administrative Law Judge ignored Dr. Ahmed's treatment notes when assessing his residual functional capacity doesn't hold water. Critically, no objective evidence of record—particularly pre-dating Caudill's date last insured—indicates that Caudill is more limited than the Administrative Law Judge found. Absent any other "specific functional limitation" there can be "no obvious impact" on Caudill's residual functional capacity. *Terwilliger*, 801 F. App'x at 622. For these reasons, the Administrative Law Judge didn't err by not explicitly discussing Dr. Ahmed's treatment notes when analyzing Caudill's residual functional capacity. *See Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (noting that an Administrative Law Judge "can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). Thus, remand is unjustified on this ground.

B

Next, Caudill argues that the Administrative Law Judge's credibility findings are unsupported by substantial evidence. An Administrative Law Judge's "findings based on credibility of the applicant are to be accorded great weight and deference, particularly since he is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of*

---

[8] As the Acting Commissioner observed, "most of the elements that [Caudill] seemingly presents as objective findings were not objective findings at all, but were in fact [his] subjective complaints taken from the 'History of Present Illness' and 'Review of Systems' sections of the record." [R. 13 at pg. 8] (referencing *Walton*, 60 F. App'x at 610).

*Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Still, the Administrative Law Judge's "assessment of a claimant's credibility must be supported by substantial evidence." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

What was once referred to as a "credibility" determination, however, is now simply referred to as a "subjective symptom evaluation." SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017); *see Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that SSR 16-3p eliminated "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character") (internal quotation marks omitted). Critically, Administrative Law Judges are "in a unique position to observe the claimant and judge his subjective complaints." *Buxton*, 246 F.3d at 773.

SSR 16-3p governs the evaluation of symptoms in Title II and Title XVI disability claims when determining whether a claimant can return to work. 82 Fed. Reg. at 49,462. A two-step inquiry guides an Administrative Law Judge's evaluation of a claimant's symptoms. *Id.* at 49,463–64. First, he must determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at 49,463. Second, he must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* During the second step, the Administrative Law Judge must "consider all the evidence presented," 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [his] statements about [his] other symptoms, evidence submitted by [his] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3). Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

As a preliminary matter, the Court notes that the Administrative Law Judge found that Caudill's underlying impairments could, indeed, be reasonably expected to produce symptoms like those alleged. [R. 6-1 at pg. 28] (finding that Caudill's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). Neither Caudill nor the Acting Commissioner contest this finding, so the Administrative Law Judge's finding at step one of the two-step inquiry is not at issue. Only his finding at step-two is at issue. And, in effect, a challenge to a finding at step two challenges the sufficiency of the evidence relied on by the Administrative Law Judge.

Here, the Administrative Law Judge's determination is supported by substantial evidence. As discussed in the previous section, the Administrative Law Judge relied on the objective medical evidence of record in assessing Caudill's residual functional capacity. Likewise, the Administrative Law Judge assessed the validity of Caudill's subjective account of his symptoms against the objective medical evidence of record. [R. 6-1 at pgs. 28–30]. Ultimately, the Administrative Law Judge found Caudill's testimony about the "intensity, persistence, and limiting effects of [his] symptoms" to be "inconsistent" with the objective medical evidence of record. [*Id.* at pg. 27]; *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App's 453, 443–44 (6th Cir. 2010) (affirming on the ground that the claimant's subjective complaints were disproportionate to the objective medical evidence). Thereafter, the Administrative Law Judge chronicled the objective medical evidence of record that supported his residual functional capacity (and subjective symptom evaluation) determination. [R. 6-1 at pgs. 28–30]. Certainly, his findings are supported by substantial evidence of record. Remand is inappropriate on this ground.

CONCLUSION

Robert Caudill appealed the Acting Commissioner's final decision that he is not entitled to disability insurance benefits. Caudill argues that the Administrative Law Judge's residual functional capacity determination that Caudill can perform sedentary exertional work is unsupported by substantial evidence. But the Administrative Law Judge's residual functional capacity determination is supported by substantial evidence. So, the Acting Commissioner's final decision is AFFIRMED. A separate judgment will follow.

Signed March 9, 2023.



Signed By:

_Edward B. Atkins_    𝓔𝐵𝐴

United States Magistrate Judge